**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff(s),**    **CASE NUMBER: 07-20472
                HONORABLE VICTORIA A. ROBERTS**

**v.**

**TRACY JOBIE NELSON,**

    **Defendant(s).**
_____/

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

This matter is before the Court on Defendant Tracy Jobie Nelson's ("Nelson") "Motion to Suppress Physical Evidence." (Doc. #29). Nelson asks the Court to suppress the cocaine seized by Officer Michael Garrison ("Officer Garrison") of the Detroit Police Department.

An evidentiary hearing was held on December 17, 2007 and continued on January 25, 2008 and April 4, 2008.

On October 15, 2008, Magistrate Judge Scheer issued a Report and Recommendation ("R&R") that recommends the Court DENY Nelson's motion. The Magistrate Judge says the traffic stop was lawful because the agents had probable cause to believe: (1) Nelson committed a traffic violation; and (2) evidence of a drug trafficking offense might be found in Nelson's pickup truck. In the alternative, the Magistrate Judge says the stop of the pickup truck was legal because the agents had

1

reasonable suspicion to believe evidence of drug trafficking might be found in the pickup truck.

Nelson objects. He says the R&R: (1) improperly finds Officer Garrison's testimony credible; (2) improperly finds an investigatory stop was justified based on reasonable suspicion of drug activity; and (3) shifts the burden of proof to Nelson.

Nelson also says the Magistrate Judge failed to include important facts in the R&R. Those "important facts" are reflected in the following section.

For the following reasons, the Court **ADOPTS** the R&R.

## II. BACKGROUND

### A. Surveillance of co-Defendants Rodney Rudy Sierz and Thrillden Gabriel Holmes

On September 14, 2007, Special Agent Paul Sorce ("SA Sorce") and Special Agent Anthony Hartman ("SA Hartman") of the Federal Bureau of Investigation conducted surveillance on 12666 Mendota, an address agents did not have information about before Nelson's co-Defendant Cardell Clinton Campbell was spotted there.

SA Hartman notified SA Sorce that a tan Explorer parked on the street directly in front of 12666 Mendota and behind a black Windstar minivan. Co-Defendant Rodney Rudy Sierz was in the passenger seat of the tan Explorer.

Co-Defendant Matt Preston Stewart owns the black minivan. He has weapons and/or narcotic offenses, and the agents believed he had a connection to 12666 Mendota.

When co-Defendant Thrillden Gabriel Holmes arrived at 12666 Mendota in his white Cadillac, he pulled all the way into the driveway. The tan Explorer followed. Both

the car and the SUV were out of the agents' sight.

The tan Explorer backed out of the driveway 4-5 minutes later.

**B.     Surveillance of Nelson**

After the tan Explorer left 12666 Mendota, SA Hartman heard a radio communication that agents found narcotics in that SUV.  SA Hartman then observed Stewart leave the Mendota address in his black minivan.  He did not carry anything from the house to the minivan.

SA Hartman followed Stewart to the parking lot of a Family Dollar Store on the corner of Joy Road and Evergreen.  Stewart got into the passenger seat of a red pickup truck, where he remained for less than five minutes.  He then got back into his black minivan and left.  Nelson drove the red pickup truck.

No one observed drugs, packages, or a drug transaction during the entire surveillance of the parking lot.  Nevertheless, SA Hartman believed a drug transaction occurred based on his training and experience.

SA Hartman followed the red pickup truck to 9907 Grayfield.  Two unknown individuals approached Nelson when he got out of the pickup truck.  Nelson talked to those individuals for 15-20 minutes and showed them a light tan plastic bag that he got from the pickup truck.  Nelson then put the plastic bag back into the pickup truck and left.

**C.     Nelson's Traffic Stop and Cocaine Seizure**

Officer Garrison was on routine traffic patrol when he received directions to meet SA Hartman on West Chicago.

3

SA Hartman told Garrison that agents had surveillance on a 2007 red Dodge pickup truck and observed a narcotics transaction between the driver of the pickup truck and Stewart, a known drug dealer. SA Hartman directed Garrison to: (1) conduct a traffic stop of the pickup truck when he had probable cause; (2) identify the driver; and (3) look for a package.

Officer Garrison observed the red pickup truck southbound on West Parkway. He followed the pickup truck as it approached Joy Road. When it turned onto eastbound Joy Road, Garrison noticed an ornament dangling from the rear-view mirror. Officer Garrison did not conduct a traffic stop. However, Garrison said Nelson changed lanes illegally 30-40 yards later. Based on the ornament and the illegal lane change, Officer Garrison conducted a traffic stop.

While Officer Garrison stopped vehicles in the past when the sole violation was an ornament dangling from the rear-view mirror or an illegal lane change, he testified that such traffic stops are unusual. The individual has usually committed more than one violation. Officer Garrison also testified that he decides whether to issue a citation for a violation. Garrison did not issue Nelson a citation, and he testified that he stopped people in the past for the violations Nelson committed without issuing a citation.

Officer Garrison said at the evidentiary hearing that when he approached the driver's side of the pickup truck, Nelson was "excited" and continuously questioned why he was stopped. According to Officer Garrison, it is not unusual for somebody to ask why he or she was stopped, but Nelson continued to ask after he told him the reasons for the stop. Officer Garrison's report says Nelson only asked him two times why he was stopped.

Officer Garrison asked Nelson for his license, registration, and proof of insurance. Those documents were valid.

Officer Garrison said he smelled a strong chemical odor coming from inside the pickup truck. Garrison described the smell as paint removal or an automotive smell. He said that odor is associated with narcotics, but it could have been a non-narcotic smell.

Based on Nelson's constant questioning and the chemical odor, Officer Garrison believed narcotics may be in the pickup truck. Garrison asked Nelson to step out of the pickup truck, and stand near his partner, Officer John Petty. Nelson was not free to leave.

When Nelson cleared the doorway, Officer Garrison observed a tan color plastic shopping bag on the floor board of the pickup truck behind the driver's seat. A clear Zip-Loc bag was sticking out of the shopping bag. Inside the Zip-Loc bag was a whitish color powdery substance. Based on his experience as a police officer, Garrison suspected the powdery substance was cocaine.

Officer Garrison went to the passenger side of the pickup truck, opened the door, and seized the cocaine. At that point, Nelson was arrested.

Scout car videos and radio transmissions from September 14, 2007 either do not exist or were not made available.

On September 25, 2007, Nelson was charged with: (1) Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §841(a)(1).

## III. APPLICABLE LAW AND ANALYSIS

### A. Did Officer Garrison have Probable Cause to Believe Nelson Committed a Traffic Violation?

Officer Garrison's decision to conduct a traffic stop is reasonable and complies with the Fourth Amendment guarantee against "unreasonable" searches and seizures if he had probable cause to believe Nelson committed a traffic violation. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (citing *Delaware v. Prouse,* 440 U.S. 648, 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)). Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

The Government has the burden to prove the traffic stop was based on probable cause. *United States v. Walters*, 492 F.Supp.2d 754, 758 (W.D. Mich. 2007) (citing *United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987)). To determine if the Government met this burden, the Court scrutinizes Officer Garrison's testimony to see if it is credible. *See United States v. Hill*, 195 F.3d 258, 267 (6th Cir. 1999); *United States v. Akram*, 165 F.3d 452, 455 (6th Cir. 1999).

Nelson says: (1) the traffic stop was not based on probable cause because it was "trivial"; (2) the traffic stop was only conducted to determine if drugs were in the pickup truck; and (3) *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000) warrants suppression of the cocaine.

Officer Garrison testified that a traffic stop for an ornament dangling from a vehicle's rear-view mirror or for an illegal lane change alone is "unusual." Garrison waited until Nelson committed both violations before he stopped him.

6

It is Nelson's subjective determination that these reasons for a traffic stop are of little value or insignificant. However, while there may be more important reasons to effect a traffic stop, that does not mean probable cause was lacking. Garrison still had reasonable grounds to believe Nelson committed both violations.

The Court declines to find the traffic stop lacked probable cause because Nelson believes it was "trivial."

But, the Court shares Nelson's concern that police officers may lie and say defendants committed a traffic violation as a pretext to determine whether vehicles contain contraband. In *Edmond*, the United States Supreme Court looked into the primary purpose of a highway checkpoint program. The Court found the checkpoint program unconstitutional because the primary purpose was the discovery and interdiction of illegal narcotics. *Edmond*, 531 U.S. at 454. This decision, however, did not change the holding in *Whren*, *supra*, that an officer's subjective intentions are irrelevant to the validity of a traffic stop that is justified by probable cause to believe a traffic violation occurred. *See id.* at 456.

It does not matter that the traffic stop was ultimately conducted to determine if narcotics were in the pickup truck. If probable cause exists, an officer may stop a vehicle for a traffic violation even when his true motivation for the stop is to search for contraband. *Hill*, 195 F.3d at 264 (citing *Whren*, 517 U.S. at 812-13). The officer's knowledge or suspicions about the traffic violator at the time of the stop is irrelevant. *Ferguson*, 8 F.3d at 391. Simply put, "traffic stops based on probable cause, even if other motivations existed, are not illegal." *Id.* at 392.

Nelson's Fourth Amendment rights were not violated. Officer Garrison's decision

to conduct a traffic stop was based on more than mere suspicion; he had probable cause to believe Nelson committed two violations.

> **B.** **Was an Investigatory Stop Justified Based on Reasonable Suspicion to Believe Evidence of Drug Trafficking Might be Found in the Pickup Truck?**

Even assuming Officer Garrison did not have probable cause to conduct a traffic stop, he had reasonable suspicion to conduct an investigatory stop.

Law enforcement officers may conduct an investigatory stop if they have a "reasonable suspicion" that an individual committed a crime. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996)). Probable cause is not required. *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citations omitted). Reasonable suspicion must be based on "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Houston*, 174 F.3d at 813 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The officer cannot base the investigatory stop on an ill-defined hunch. He or she must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Houston*, 174 F.3d at 813 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998)).

The agents did not observe a drug transaction during their entire surveillance of Nelson. However, Nelson had a brief encounter with Stewart, who has a drug conviction, and, after Nelson left the Family Dollar Store parking lot with Stewart, he showed two unknown individuals a package he got from his pickup truck.

8

In deciding motions to suppress filed by co-Defendants, the Court found that a kilogram of cocaine was seized after Campbell left 12666 Mendota; and, cocaine was seized from Sierz when he left 12666 Mendota. Nelson's encounter with Stewart occurred after Stewart left 12666 Mendota.

While Officer Garrison did not personally observe the surveillance of the pickup truck, reasonable suspicion may be satisfied by the collective knowledge of the police. *United States v. Townsend*, 330 F.3d 438, 441 (6th Cir. 2003).

Viewing the evidence in the light most favorable to the Government, and based on the totality of the circumstances, Officer Garrison – through the agents' observations and the information he obtained from SA Hartman on West Chicago – had at least reasonable suspicion to believe Nelson was part of a drug distribution conspiracy and that he had just picked up cocaine from Stewart at the parking lot of a Family Dollar Store.

Based on these findings, the Court need not address whether the agents had probable cause to believe Nelson committed a drug trafficking offense.

## IV. CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R. Nelson's motion to suppress is **DENIED**.

**IT IS ORDERED**.

                                             S/Victoria A. Roberts
                                             Victoria A. Roberts
                                             United States District Judge

Dated: November 6, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 6, 2008.

s/Carol A. Pinegar
Deputy Clerk